

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-1015-18

## RALPH DEWAYNE WATKINS, Appellant

## v.

## THE STATE OF TEXAS

## ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE TENTH COURT OF APPEALS
## NAVARRO COUNTY

NEWELL, J., delivered the opinion of the Court in which HERVEY, RICHARDSON, KEEL, WALKER, SLAUGHTER and MCCLURE, JJ., joined. KELLER, P.J.,filed a dissenting opinion. YEARY, J., filed a dissenting opinion.

This case concerns the admission of 33 of 34 exhibits during the punishment phase of Appellant's trial for possession with intent to deliver a controlled substance. The exhibits are a collection of booking records,

pen packets, and judgments of prior convictions that were used to prove two prior convictions for enhancement and other extraneous offenses that Appellant had committed. Prior to trial, Appellant's attorney timely requested disclosure of "any other tangible things not otherwise privileged that constitute or contain evidence material to any matter involved in the case" pursuant to Article 39.14 of the Code of Criminal Procedure. The prosecutor provided notice of the State's intent to introduce evidence of these prior convictions and extraneous offenses at punishment. The prosecutor didn't disclose copies of the exhibits themselves until it was time to introduce them.

So did the trial court err to admit these exhibits over Appellant's objection? The answer to that question turns upon whether these exhibits "constitute or contain evidence material to any matter involved in the action." That requires this Court to construe the phrase "material to any matter involved in the action" as it appears in Article 39.14 of the Code of Criminal Procedure.

The court of appeals relied upon precedent in which this Court engaged in a due-process materiality analysis for violations of the previous version of Article 39.14. Though the same phrase "material to any matter involved in the action" appears in the amended version of

Article 39.14, this Court's interpretation of the previous version of Article 39.14 has focused upon whether a trial court is required to order disclosure, not the meaning of the statutory phrase at issue. Given this confusion, we cannot presume that the Legislature relied upon our precedent interpreting Article 39.14 when maintaining the phrase "material to any matter involved in the action" in the current version of the statute.

Under these circumstances, we construe the amended statute as adopting the ordinary definition of "material." Evidence is "material" if it has "some logical connection to a consequential fact." Whether evidence is "material" is therefore determined by evaluating its relation to a particular subject matter rather than its impact upon the overall determination of guilt or punishment in light of the evidence introduced at trial. In this case, the exhibits at issue were "material" because they had a logical connection to subsidiary punishment facts. We reverse the court of appeals and remand the case so that the court of appeals may analyze whether Appellant was harmed by the lack of disclosure.

## Facts

The State charged Appellant with first-degree felony possession of a controlled substance with intent to deliver. The State also alleged in

the indictment that Appellant had previously been convicted of two prior and sequential felony offenses, namely aggravated assault and retaliation. Appellant requested a court-appointed lawyer.

Appellant's trial counsel sent a discovery request pursuant to Article 39.14. He asked for, among other things, "any other tangible things not otherwise privileged that constitute or contain evidence material to any matter involved in the case."[1] He also requested notice of the State's intent to offer any extraneous offenses, which the prosecution provided. A jury convicted Appellant of the lesser-included offense of second-degree possession of a controlled substance.[2]

During the punishment phase of the trial, the State sought to introduce 34 exhibits consisting of booking records, pen packets, and judgments and sentences. The State intended to use these exhibits to prove up the two felony convictions alleged in the enhancement paragraphs, as well as a number of different extraneous offenses. Trial counsel objected on the ground that these exhibits had not been disclosed

---

[1] Appellant also requested "any designated documents, papers, written or recorded." He did not, however, designate any specific documents in that request, and that is not the basis upon which he argues on appeal that discovery was required.

[2] TEX. HEALTH & SAFETY CODE ANN. § 481.115(d) (2010).

to the defense despite a discovery request.[3]  The prosecutor responded that he had provided notice of the State's intent to introduce evidence of prior convictions.  However, the prosecutor acknowledged that he had not provided access to the exhibits because he did not believe Article 39.14 applied to punishment, particularly when the previous offenses occurred prior to the passage of the Michael Morton Act.[4]  The trial court initially sustained Appellant's objection, but later reversed its decision allowing the evidence to be admitted.

## Appeal

Appellant argued to the court of appeals that Article 39.14 was not limited to case-in-chief evidence.  Appellant also argued that the statute required disclosure because the word "material" in the statute does not modify "offense reports" or "any designated documents, papers, written or recorded statements of the defendant or a witness, including witness statements of law enforcement officers but not including the work product of counsel for the state in the case and their investigators and their notes

---

[3] Trial counsel later acknowledged that he received one book-in sheet out of the exhibits offered, so he withdrew his objection to the admission of that sheet.  He maintained his objection to the remaining 33 exhibits.

[4] With regard to the pen packets, the prosecutor also argued that two of the prior convictions were being used for enhancement purposes as set out in the indictment and that Appellant had pleaded true to both.

or report." The State conceded on appeal that Article 39.14 applies to punishment evidence but nevertheless argued that the exhibits involved proof of extraneous offenses so they were not "material to any matter involved in the case." Appellant replied that the evidence at issue was material because it affected Appellant's punishment.

The State Prosecuting Attorney's Office (SPA) filed an amicus brief setting out, as Appellant did in his brief, the lack of clarity in this Court's precedent construing the definition of "material" in previous versions of Article 39.14(a). The SPA noted, as Appellant did, that this Court's precedent often conflated the inquiry into whether evidence was "material" with statutory requirements of a court order and a showing of "good cause" for disclosure (statutory requirements that no longer exist). The Texas Criminal Defense Lawyer's Association (TCDLA) also filed an amicus brief, arguing that the legislative history behind the Michael Morton Act suggested no limitations on the type of evidence that must be disclosed.

The court of appeals assumed that any item requested for disclosure under Article 39.14(a) must also be "material" and addressed the exhibits

at issue.[5]   According to the court of appeals, it would have construed "material to any matter involved in the action" as including any evidence that the State intends to use as an exhibit to prove its case to the fact-finder in both the guilt and punishment phases at trial, but it was required to apply this Court's precedent.[6]   The court of appeals noted that "what is 'material' has been subject to substantial judicial interpretation prior to the debate and passage of the Michael Morton Act."[7] Consequently, the court of appeals concluded, "Material for purposes of Article 39.14(a) means that 'there is a reasonable probability that had the evidence been disclosed, the outcome of the trial would have been different.'"[8]   Based upon this understanding, the court of appeals held that the exhibits at issue were not material, and therefore the trial court did not abuse its discretion when it ruled they were admissible despite the lack of

---

[5] *Watkins v. State*, 554 S.W.3d 819, 820–21 (Tex. App.—Waco 2018) ("Article 39.14(a) states that upon a timely request the State must provide 'any offense reports, any designated documents, papers, written or recorded statements of the defendant or a witness, including witness statements of law enforcement officers but not including the work product of counsel for the state in the case and their investigators and their notes or report, or any designated books, accounts, letters, photographs, or objects or other tangible things not otherwise privileged *that constitute or contain evidence material to any matter involved in the action and that are in the possession, custody, or control of the state or any person under contract with the state*.'") (emphasis in original).

[6] *Id.* at 821.   The State also argued that extraneous offense evidence is not "material to any matter involved in the action," but the court of appeals rejected that argument.  *Id.*

[7] *Id.*

[8] *Id.* at 822.

disclosure.[9]

## Discretionary Review

In his petition for review to this Court, Appellant raised one ground: "While reviewing a violation of the Michael Morton Act, the Court of Appeals erred in its materiality analysis." According to Appellant, the changes to the statute render the Legislature's use of the word "material" in Article 39.14(a) ambiguous. And, given that ambiguity, resort to extra-textual factors reveals that we should interpret the word "material" as synonymous with "relevant."

The State argues in response that the plain meaning of the statute is unambiguous. According to the State, we should apply the "Prior Construction Canon" to presume that our Legislature intended to apply this Court's previous interpretation of the phrase "material to any matter involved in the action." Under this approach, we should hold that our Legislature intended the definition of "material" to be outcome determinative.

However, the State posits that prior to the enactment of the Michael Morton Act, this Court had provided two definitions of "material." For

---

[9] *Id.*

exculpatory, impeaching, or mitigating evidence, this Court defined "material" to mean "a reasonable probability that disclosure would lead to a different outcome." For inculpatory evidence, this Court defined "material" as "indispensable to the State's case." According to the State, we should adopt this latter definition of the word "material" rather than the definition relied upon by the court of appeals. Significantly, the State argues in a post-submission brief that the court of appeals' reliance upon the definition of "material" associated with exculpatory evidence erroneously converts the two-step process of determining error and harm into a one-step process by conflating the two concepts.

The TCDLA filed an amicus brief in support of Appellant's position. According to the TCDLA, the amended Article 39.14 is a wholly new statutory scheme. As such, prior interpretations of the term "material" should not apply. Instead, this Court should recognize that the term "material" is ambiguous and should interpret the Michael Morton Act as creating a statutory "open file policy." This interpretation would require disclosure of evidence regardless of the prosecution's view of the value or impact of the evidence on the rest of the available evidence.

The SPA filed an amicus brief as well, acknowledging that the court of appeals inaccurately described this Court's precedent regarding the

term "material" as it relates to Article 39.14(a). Nevertheless, the SPA argues that this Court should adhere to this prior case law as a matter of *stare decisis*.

With all these arguments in mind, we turn to the question of how to construe the statutory phrase "material to any matter in involved in the case."

## **Standard of Review**

When we interpret statutes, we seek to effectuate the collective intent or purpose of the legislators who enacted the legislation.[10] In so doing, we necessarily focus our attention on the literal text of the statute in question and attempt to discern the fair, objective meaning of the text at the time of its enactment.[11] We follow this principle because (1) the text of the statute is the law; (2) the text is the only definitive evidence of what the legislators had in mind when the statute was enacted into law; and (3) the Legislature is constitutionally entitled to expect that the Judiciary will faithfully follow the specific text that was adopted.[12] Our duty is to try to interpret the work of our Legislature as best we can to

---

[10] *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991).

[11] *Id*.

[12] *Mahaffey v. State*, 316 S.W.3d 633, 637–38 (Tex. Crim. App. 2010) (quoting *Boykin*, 818 S.W.2d at 785).

fully effectuate the goals they set out.[13]    Legislative intent isn't the law, but discerning legislative intent isn't the end goal, either.  The end goal is interpreting the text of the statute.[14]

In interpreting the text of the statute, we must presume that every word in a statute has been used for a purpose and that each word, phrase, clause, and sentence should be given effect if reasonably possible.[15]  We do not focus solely upon a discrete provision; we look at other statutory provisions as well to harmonize provisions and avoid conflicts.[16]  When we are dealing with the passage of a particular act, such as the one at issue here, we look to the entire act in determining our Legislature's intent with respect to a specific provision.[17] And we construe

---

[13] Tex. Code Crim. Proc. art. 1.26 ("The provisions of this Code shall be liberally construed so as to attain the objects intended by the Legislature: The prevention, and suppression, and punishment of crime."); *see also, e.g.,* Tex. Penal Code § 1.05(a) ("The rule that a penal statute is to be strictly construed does not apply to this code.  The provisions of this code shall be construed according to the fair import of their terms, to promote justice and effect the objectives of the code.").

[14] *See State v. Mancuso*, 919 S.W.2d 86, 87 (Tex. Crim. App. 1996) (citing *Boykin* 818 S.W.2d at 785 and Tex. Const. art. II, § 1 for the proposition that "[i]t is the duty of the Legislature to make laws, and it is the function of the Judiciary to interpret those laws.").

[15] *State v. Rosenbaum*, 818 S.W.2d 398, 400–01 (Tex. Crim. App. 1991) (citing Tex. Gov't Code §§ 311.025(b), 311.026(a)); *State v. Hardy*, 963 S.W.2d 516, 520 (Tex. Crim. App. 1997).

[16] *See, e.g., Murray v. State,* 302 S.W.3d 874, 877–79 (Tex. Crim. App. 2009) (interpreting the phrase "included in the indictment" in Article 4.06 of the Code of Criminal Procedure after considering Articles 37.08 and 37.09 of the Code of Criminal Procedure).

[17] *See, e.g., Taylor v. Firemen's & Policemen's Civil Service*, 616 S.W.2d 187, 190 (Tex. 1981); *see also Ex parte Woods*, 108 S.W. 1171, 1176 (Tex. Crim. App. 1908).

a statute that has been amended as if it had originally been enacted in its amended form, mindful that the Legislature, by amending the statute, may have altered or clarified the meaning of earlier provisions.[18] "Time-honored canons of interpretation, both semantic and contextual, can aid interpretation, provided the canons esteem textual interpretation."[19]

But, most importantly, we read words and phrases in context and construe them according to rules of grammar and common usage.[20] When a particular term is not legislatively defined but has acquired a technical meaning, we construe that term in its technical sense.[21] We may consult standard or legal dictionaries in determining the fair, objective meaning of undefined statutory terms, and legal dictionaries to determine the meaning of undefined legal terms.[22]

When the language of the statute is ambiguous or leads to absurd

---

[18] *Powell v. Hocker*, 516 S.W.3d 488, 493 (Tex. Crim. App. 2017); *see also Mahaffey*, 316 S.W.3d at 642 (citing *Getts v. State*, 155 S.W.3d 153, 158 (Tex. Crim. App. 2005)).

[19] *BankDirect Capital Fin., LLC v. Plasma Fab, LLC*, 519 S.W.3d 76, 84 (Tex. 2017).

[20] *Yazdchi v. State*, 428 S.W.3d 831, 837 (Tex. Crim. App. 2014).

[21] *See Medford v. State*, 13 S.W.3d 769, 772 (Tex. Crim. App. 2000) (explaining that "the canons of construction" dictate that words and phrases possessing a technical meaning are generally to be considered as having been used in their technical sense).

[22] *Clinton v. State*, 354 S.W.3d 795, 800 (Tex. Crim. App. 2011); *Ex parte Rieck*, 144 S.W.3d 510, 512–13 (Tex. Crim. App. 2004).

results, we may consider extra-textual factors in construing the statute.[23]

A statute is ambiguous when it may be understood by reasonably well-informed persons to have two or more different interpretations.[24] For example, the statutory use of the word "table" can be ambiguous if it is impossible to tell from context whether the statute refers to a breakfast table or a numerical chart.[25] Extra-textual factors that we may consider to resolve ambiguity include: (1) the object sought to be attained by the Legislature; (2) the circumstances under which the statute was enacted; (3) the legislative history; (4) the common law or former statutory provisions, including laws on the same or similar subjects; (5) the consequences of a particular construction; (6) the administrative construction of the statute; and (7) the title or caption, preamble, and any emergency provision.[26] Statutory construction is a question of law that we review *de novo*.[27]

---

[23] *Id.*

[24] *Lang v. State*, 561 S.W.3d 174, 180 (Tex. Crim. App. 2018); *see also Baird v. State*, 398 S.W.3d 220, 229 (Tex. Crim. App. 2013) (noting that a statute is ambiguous when the language it employs is reasonably susceptible to more than one understanding).

[25] Antonin Scalia & Bryan Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 46 (1st ed. 2012).

[26] *Arteaga v. State*, 521 S.W.3d 329, 334 (Tex. Crim. App. 2017) (citing TEX. GOV'T. CODE § 311.023).

[27] *Ramos v. State*, 303 S.W.3d 302, 306 (Tex. Crim. App. 2009).

## Analysis

To answer this question of law, we first set out the text of Article 39.14 and how the Michael Morton Act has changed the statute from its original form. Second, we consider the phrase "material to any matter involved in the action" as it appears in Article 39.14(a). Third, we consider whether we can apply the "Prior Construction Canon" to the statute when interpreting that phrase. Fourth, we consider whether the legislative history of the Michael Morton Act requires a different interpretation of "material to any matter involved in the action." And finally, we determine whether the court of appeals erred in determining that the exhibits at issue were not "material."

Ultimately, we hold that the exhibits at issue were "material." Adhering to the text of the statute and considering how the word "material" appears in the context of the statute, we hold that the phrase "material to any matter involved in the action" should be given its ordinary meaning. The exhibits at issue in this case were "material" because they had a "logical connection to a consequential fact."

### The Text of Article 39.14 and the Michael Morton Act

Looking at the text of Article 39.14 prior to the passage of Senate Bill 1611 (otherwise known as the Michael Morton Act) and afterwards

provides some insight into how the amendments to the statute should be construed. Prior to 2013, the Texas discovery statute, Article 39.14 of the Code of Criminal Procedure, consisted of only two subsections:

> (a) Upon motion of the defendant showing good cause therefore and upon notice to the other parties, except as provided by Article 39.15, the court in which an action is pending shall order the State before or during trial of a criminal action therein pending or on trial to produce and permit the inspection and copying or photographing by or on behalf of the defendant of any designated documents, papers, written statement of the defendant (except written statements of witnesses and except the work product of counsel in the case and their investigators and their notes or report), books, accounts, letters, photographs, objects or tangible things not privileged, which constitute or contain evidence material to any matter involved in the action and which are in the possession, custody or control of the State or any of its agencies. The order shall specify the time, place and manner of making the inspection and taking the copies and photographs of any of the aforementioned documents or tangible evidence; provided, however, that the rights herein granted shall not extend to written communications between the State or any of its agents or representatives or employees. Nothing in this Act shall authorize the removal of such evidence from the possession of the State, and any inspection shall be in the presence of a representative of the State.

> (b) On motion of a party and on notice to the other parties, the court in which action is pending may order one or more of the other parties to disclose to the party making the motion the name and address of each person the other party may use at trial to present evidence under Rules 702, 703, and 705, Texas Rules of Evidence. The court shall specify in the order the time and manner in which the other party must make the disclosure to the moving party, but in specifying the time in

which the other party shall make disclosure the court shall require the other party to make the disclosure not later than the 20th day before the date trial begins.[28]

This Court often held that under earlier versions of the statute that there was no general right of discovery in Texas.[29] The decision on what was discoverable was left to the discretion of the trial court.[30]

Attempts were made over different legislative sessions to amend the statute to expand the scope of discovery, but, aside from small changes, those attempts were unsuccessful.[31] The wrongful conviction of Michael Morton provided a significant spark the Legislature needed to completely change criminal discovery in Texas.[32] As discussions of the proposed

---

[28] TEX. CODE CRIM. PROC. art. 39.14 (2009).

[29] *Quinones v. State*, 592 S.W.2d 933, 940 (Tex. Crim. App. 1980), *abrogated on other grounds by Ehrke v. State*, 459 S.W.3d 606 (Tex. Crim. App. 2015).

[30] *Id.*

[31] Hearing on S.B. 1611 Before the S. Comm. on Criminal Justice, 83rd Leg., R.S. (2013); *see also* Brandi Grissom, *House Panel Hears Testimony on "Michael Morton Act"*, TEXAS TRIBUNE (April 29, 2013), https://www.texastribune.org/2013/04/29/after-judges-arrest-committee-hears-misconduct-bil/ ("Legislators have proposed opening the discovery process in previous legislative sessions, but the high-profile Morton case and his promotion of reform to prevent wrongful convictions gave the effort momentum this year."); State's Br. 14 (arguing that the purpose of the Michael Morton Act was to expand the State's discovery requirements in an effort to prevent wrongful convictions like the one involving Michael Morton from reoccurring); George E. Dix & John M. Schmolesky, 42 TEXAS PRACTICE SERIES: CRIMINAL PRACTICE AND PROCEDURE § 27:53 (3d ed. 2010) ("Article 39.14 remained substantively unchanged since its promulgation in 1965 until 2005."); H.B. 969, 79th Leg., R.S. (2005) (amending Article 39.14(a) to replace "may" with "shall").

[32] Hearing on S.B. 1611 Before the S. Comm. on Criminal Justice, 83rd Leg., R.S. (2013).

amendments revealed, Michael Morton had spent twenty-five years in prison for a crime he did not commit because the prosecutor trying his case had withheld material, exculpatory evidence.[33]

After the passage of Senate Bill 1611, Article 39.14 consists of fourteen different subsections:

> (a) Subject to the restrictions provided by Section 264.408, Family Code, and Article 39.15 of this Code, as soon as practicable after receiving a timely request from the defendant the state shall produce and permit the inspection and the electronic duplication, copying, and photographing, by or on behalf of the defendant, of any offense reports, any designated documents, papers, written, or recorded statements of the defendant or a witness, including witness statements of law enforcement officers but not including the work product of counsel for the state in the case and their investigators and their notes or report, or any designated books, accounts, letters, photographs, or objects or other tangible things not otherwise privileged that constitute or contain evidence material to any matter involved in the action and that are in the possession, custody, or control of the state or any person under contract with the state. The state may provide to the defendant electronic duplicates of any documents or other information described by this article. The rights granted to the defendant under this article do not extend to written communication between the state and an agent, representative, or employee of the state. This article does not authorize the removal of the documents, items, or information from the possession of the state, and any inspection shall be in the presence of a representative of the state.

---

[33] *Id*.

(b) On motion of a party and on notice to the other parties, the court in which action is pending may order one or more of the other parties to disclose to the party making the motion the name and address of each person the other party may use at trial to present evidence under Rules 702, 703, and 705, Texas Rules of Evidence. The court shall specify in the order the time and manner in which the other party must make the disclosure to the moving party, but in specifying the time in which the other party shall make disclosure the court shall require the other party to make the disclosure not later than the 20th day before the date trial begins.

(c) If only a portion of the applicable document, item, or information is subject to discovery under this article, the state is not required to produce or permit the inspection of the remaining portion that is not subject to discovery and may withhold or redact that portion. The state shall inform the defendant that a portion of the document, item, or information has been withheld or redacted. On request of the defendant, the court shall conduct a hearing to determine whether withholding or redaction is justified under this article or other law.

(d) In the case of a pro se defendant, if the court orders the state to produce and permit the inspection of a document item, or information under this subsection, the state shall permit the pro se defendant to inspect and review the document, item, or information but is not required to allow electronic duplication as described by Subsection (a).

(e) Except as provided by Subsection (f), the defendant, the attorney representing the defendant, or an investigator, expert, consulting legal counsel, or other agent of the attorney representing the defendant may not disclose to a third party any documents, evidence, materials, or witness statements received from the state under this article unless:

> (1) a court orders the disclosure upon a showing of good cause after notice and hearing after considering the

security and privacy interests of any victim or witness; or

(2) the documents, evidence, materials, or witness statements have already been publicly disclosed.

(f) The attorney representing the defendant, or an investigator, expert, consulting legal counsel, or agent for the attorney representing the defendant, may allow a defendant, witness, or prospective witness to view the information provided under this article, but may not allow that person to have copies of the information provided, other than a copy of the witness's own statement. Before allowing the person to view a document or the witness statement of another under this subsection, the person possessing the information shall redact the address, telephone number, driver's license number, social security number, date of birth, and any back account or other identifying numbers contained in the document or witness statement. For purposes of this section, the defendant may not be the agent for the attorney representing the defendant.

(g) Nothing in this section shall be interpreted to limit an attorney's ability to communicate regarding his or her case within the Texas Disciplinary Rules of Professional Conduct, except for the communication of information identifying any victim or witness, including name, except as provided in Subsections (e) and (f), address, telephone number, driver's license number, social security number, date of birth, and bank account information or any information that by reference would make it possible to identify a victim or a witness. Nothing in this subsection shall prohibit the disclosure of identifying information to an administrative, law enforcement, regulatory, or licensing agency for the purpose of making a good faith complaint.

(h) Notwithstanding any other provision of this article, the state shall disclose to the defendant any exculpatory, impeachment, or mitigating document, item, or information in

the possession, custody, or control of the state that tends to negate the guilt of the defendant or would tend to reduce the punishment for the offense charged.

(i) The state shall electronically record or otherwise document any document, item, or other information provided to the defendant under this article.

(j) Before accepting a plea of guilty or nolo contendere, or before trial, each party shall acknowledge in writing or on the record in open court, the disclosure, receipt, and list of all documents, items, and information provided to the defendant under this article.

(k) If at any time before, during, or after the trial the state discovers any additional document, item, or information required to be disclosed under Subsection (h), the state shall promptly disclose the existence of the document, item, or information to the defendant or the court.

(l) A court may order the defendant to pay costs related to discovery under this article, provided that costs may not exceed the charges prescribed by Subchapter F, Chapter 552, Government Code.

(m) To the extent of any conflict, this article prevails over Chapter 552, Government Code.

(n) This article does not prohibit the parties from agreeing to discovery and documentation requirements equal to or greater than those required under this article.[34]

A simple side-by-side comparison shows that the Michael Morton Act did not merely amend a portion of Article 39.14(a); it revamped Article 39.14

---

[34] TEX. CODE CRIM. PROC. art. 39.14.

completely. It was, as the State agrees, an overhaul of discovery in Texas.[35]

On the whole, the statutory changes broaden criminal discovery for defendants, making disclosure the rule and non-disclosure the exception. Significantly, Article 39.14(h) places upon the State a free-standing duty to disclose all "exculpatory, impeaching, and mitigating" evidence to the defense that tends to negate guilt or reduce punishment.[36] Our Legislature did not limit the applicability of Article 39.14(h) to "material" evidence, so this duty to disclose is much broader than the prosecutor's duty to disclose as a matter of due process under *Brady vs. Maryland*.[37] This subsection blankets the exact type of exculpatory evidence at issue in the Michael Morton case while creating an independent and continuing duty for prosecutors to disclose evidence that may be favorable to the defense even if that evidence is not "material."[38]

Also, the statute requires disclosure of evidence that merely "tends"

---

[35] State's Br. 9.

[36] TEX. CODE CRIM. PROC. art. 39.14(h).

[37] 373 U.S. 83 (1963).

[38] *See* Hearing on S.B. 1611 Before the H. Comm. On Judiciary & Civil Jurisprudence, 83rd Leg., R.S. (2013) (Testimony of Rob Kepple of the Texas District and County Attorney's Association) (noting one of the main goals of the bill was to get (1) all offense reports and (2) all witness statements turned over because that was problem with Michael Morton's case).

to negate guilt or mitigate punishment.[39]  This echoes the definition of evidentiary relevancy.  Relevant evidence is any evidence that has any tendency to make the existence of any fact of consequence to the determination of the action more probable or less probable than it would be without the evidence.[40]  Evidence need not by itself prove or disprove a particular fact to be relevant; it is sufficient if the evidence provides a small nudge toward proving or disproving some fact of consequence.[41] Under Article 39.14(h), the State has an affirmative duty to disclose any relevant evidence that tends to negate guilt or mitigate punishment regardless of whether the evidence is "material" under *Brady v. Maryland*.

Any evidence that does not fall under Article 39.14(h)—that is, any evidence that does not tend to negate guilt or mitigate punishment— must be disclosed upon request without any showing of "good cause" or the need to secure a discretionary trial court order.[42]  Disclosure is

---

[39] TEX. CODE CRIM. PROC. art. 39.14(h).

[40] *See Stewart v. State*, 129 S.W.3d 93, 96 (Tex. Crim. App. 2004) (citing TEX. R. EVID. 401).

[41] *Id.* (citing MCCORMICK HANDBOOK OF THE LAW OF EVIDENCE § 185, at 436 (2d ed. 1972)).

[42] Enrolled Bill Summary of S. 1611, 83d Leg., R.S. (2013) ("Previous law required the state to disclose certain evidence in a pending criminal action only on a good cause showing by the defendant and on notice to the other parties.  The bill instead requires the state, as soon as practicable after receiving a timely request from the defendant and subject to certain restrictions, to produce and permit the inspection and the electronic duplication, copying, and photographing, by or on behalf of the defendant, of certain evidence.").

mandatory and must occur "as soon as practicable."[43]  The Legislature also added to the list of discoverable evidence in Article 39.14(a), as well as increased the number of people and entities whose records are subject to discovery.[44]  With the exception of privileged evidence and evidence specifically covered by other statutory provisions, the only obstacle to disclosure of evidence not already covered by Article 39.14(h) is the lack of a specific request.

Generally speaking, the current version of Article 39.14 removes procedural hurdles to obtaining discovery, broadens the categories of discoverable evidence, and expands the State's obligation to disclose. Further, the State's new, broader obligations apply prior to trial, continue after conviction, and must be complied with quickly.[45]  Article 39.14 also holds the State accountable to these new obligations by requiring prosecutors to document and put on the record what has been turned over before a criminal defendant can plead guilty.[46]  And finally, the

---

[43] TEX. CODE CRIM. PROC. art. 39.14(a).

[44] TEX. CODE CRIM. PROC. art. 39.14(a), (f).

[45] TEX. CODE CRIM. PROC. art. 39.14(k) ("If at any time before, during, or after trial the state discovers any additional document, item, or information required to be disclosed under Subsection (h), the state shall promptly disclose the existence of the document, item, or information to the defendant or the court.").

[46] TEX. CODE CRIM. PROC. art. 39.14(i) ("The state shall electronically record or otherwise document any document, item, or other information provided to the defendant under this

statute allows for parties to agree to even broader discovery than the statute requires.[47]  All of these changes significantly expand the scope of criminal discovery in Texas to require disclosure of a great deal of evidence even though our Legislature retained the word "material" to modify discoverable evidence in Article 39.14(a).  It is against this backdrop that we consider the use of the word "material" as it appears in Article 39.14(a).

### The Meaning of "Material" is Plain, Unambiguous, and Synonymous with "Relevant" When Considered in Context

At the outset, the use of the word "material" in the statutory phrase at issue—"any objects or other tangible things not otherwise privileged that constitute or contain evidence material to any matter involved in the action"—is plain on its face, albeit broad in its applicability.  As the SPA acknowledged to the court of appeals, "any matter involved in the action" is not limited to the two ultimate issues of guilt or punishment; it covers any number of subsidiary issues impacting the outcome of the

---

article."); TEX. CODE CRIM. PROC. art. 39.14(j) ("Before accepting a plea of guilty or nolo contendere, or before trial, each party shall acknowledge in writing or on the record in open court the disclosure, receipt, and list of all documents, items, and information provided to the defendant under this article.").

[47] TEX. CODE CRIM. PRO. art. 39.14(n) ("This article does not prohibit the parties from agreeing to discovery and documentation requirements equal to or greater than those required under this article.").

proceedings.[48]  Our Legislature did not, for example, use the phrase "material to guilt or punishment."  This contrasts with how *Brady* and its progeny define the concept of "materiality."  Materiality, as a matter of constitutional due process, is specifically tied to the jury's determination of guilt or punishment and judged in hindsight in relation to all the evidence admitted at trial.[49]  By its plain text, Article 39.14(a) is not.

Alone, the word "material" is susceptible to an easily understood and accepted definition that can include "relevant," albeit with more persuasive force.  The Cambridge English Dictionary defines "material" as "important or having important effect."[50]  Black's Law Dictionary defines

---

[48] SPA Amicus Br. on Direct Appeal 12 ("In context, subsection (a) applies to evidence that could influence the jury on any number of subsidiary matters relevant to the ultimate issues of guilt and punishment.").

[49] *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999) ("There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."); *see, e.g., Scott v. United States*, 890 F.3d 1239, 1250 n.6 (11th Cir. 2018) ("[T]he Supreme Court has classified as 'real' (and therefore actionable) *Brady* violations only one subset of cases where the prosecution fails to disclose exculpatory evidence within its possession: those in which it is reasonably probable in hindsight that a jury privy to the undisclosed material would have returned a different verdict.").

[50] CAMBRIDGE ENGLISH DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/material (last visited Dec. 12, 2020); *see also* MERRIAM-WEBSTER COLLEGIATE DICTIONARY 765 (11th ed. 2003) (defining material as "of or relating to the subject matter of reasoning" and "having real importance or great consequences"); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1342 (2002) (defining "material" as "being of real importance or great consequence; substantial; essential"); OXFORD ENGLISH DICTIONARY (3d ed. 2001) (defining "material" as "having significance or relevance; . . . of serious or substantial  import; . . . significant, important, of consequence"); WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 733 (9th ed. 1988) (defining "material" as "having real importance or great consequences"); AMERICAN HERITAGE DICTIONARY 772 (2d college ed. 1982) (defining "material" as "substantial," as opposed to

"material" as a modifier for evidence as "having some logical connection with the consequential facts" but also as a modifier for an alteration in a document as something "of such a nature that knowledge of the item would affect a person's decision-making; significant; essential."[51] Merriam-Webster's Legal Dictionary also defines "material" as both "being of real consequence or importance" and "being relevant to a subject under consideration."[52]

But again, the word "material" in the statute is modified by the phrase "to any matter involved in the action." The evidence at issue need only have a persuasive effect on any subsidiary issue for which it is being

---

trivial).

[51] BLACK'S LAW DICTIONARY 1170 (11th ed. 2019); *see also* BLACK'S LAW DICTIONARY 1124 (10th ed. 2014) (same); BLACK'S LAW DICTIONARY 998 (8th ed. 2004) (same); BLACK'S LAW DICTIONARY 793 (abridged 7th ed. 2000) (same); BLACK'S LAW DICTIONARY 880 (5th ed. 1979) (defining "material" as: "[i]mportant; more or less necessary; having influence or effect; going to the merits; having to do with matter, as distinguished from form. Representation relating to matter which is so substantial and important as to influence party to whom made is material."). "Material Evidence" is defined under "Evidence" in Black's as "Evidence having some logical connection with the facts of the case or the legal issues presented." BLACK'S LAW DICTIONARY (11th ed. 2019). *See also* BLACK'S LAW DICTIONARY 881 (5th ed. 1979) (defining "material evidence" as "That quality of evidence which tends to influence the trier of fact because of its logical connection with the issue. Evidence which has an effective influence or bearing on question in issue is material. . . . Materiality of evidence refers to pertinency of the offered evidence to the issue in dispute. . . . Material evidence is evidence which is material to question in controversy, and which must necessarily enter into the consideration of the controversy, and which by itself or in connection with other evidence is determinative of the case.").

[52] MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/material#legalDictionary (last visited Dec. 14, 2020); *see also* WOLTERS KLUWER BOUVIER LAW DICTIONARY 686 (Stephen Michael Sheppard ed., compact ed. 2011) ("Materiality is a measure of importance."); BALLENTINE'S LAW DICTIONARY 781 (3rd ed. 1969) (defining "material" as "important").

considered. Nothing in the text suggests that the character of the evidence should be judged solely in relation to its consequential effect on the ultimate issues of guilt or punishment.

Moreover, the Legislature's removal of the "good cause" requirement and the transfer of the duty to disclose to the prosecution and away from the trial court's discretion, further undermines the contention that materiality under this statute should be judged in relation to the entire record after trial. Under the text of the statute, prosecutors assess whether a particular piece of requested evidence has some logical connection with consequential facts looking forward at the time of the request, most often prior to trial. At that point, and without knowing the defensive theories or what evidence will or will not be admitted into evidence, the possible impact of a single piece of evidence is difficult, if not impossible, to guess.[53] The impact that a piece of evidence may have upon the ultimate issue of guilt or punishment is more appropriate for assessing the harm after a failed disclosure.[54] The due process concept of "materiality" provides little guidance prior to trial when a request for

---

[53] SPA Amicus Br. on Direct Appeal 7–8.

[54] The State appears to agree by noting that courts conducting a statutory harm analysis will still effectively conduct a *Brady* materiality analysis as part of that harm analysis. *See* State's Post-Submission Letter Br. 2.

disclosure is made.[55]

Given the statutory context in which the word "material" appears, the distinction between the meanings of the terms "material" and "relevant" is untenable. As discussed above, the definitions of "material" allude to a persuasive or consequential effect of a particular piece of evidence. But, the use of the modifying phrase "to any matter involved in the action" broadens the scope of what type of evidence is "material" beyond the ultimate issues of either guilt or punishment. Had "material" been tied to the ultimate issues of guilt or punishment, the text of the statute could be said to require a greater showing of importance or consequence before evidence could be characterized as "material" because the persuasive effect would have to be weighed against those ultimate issues. Without that modification, evidence need only have a logical connection to a fact of consequence to any number of subsidiary issues rather than to the outcome itself. In the context of the statutory phrase, and as a matter of modern legal usage, "the definition of *material*

---

[55] *See United States v. Agurs*, 427 U.S. 97, 108, 113 (1976) (noting that the significance of a particular piece of evidence "can seldom be predicated accurately until the entire record is complete" and explaining that *Brady* materiality standard requires evaluating undisclosed evidence "*in the context of the entire record*") (emphasis added).

is one that most educated people would match with *relevant*."[56]

Nevertheless, the court of appeals noted its obligation to apply this Court's precedent interpreting the previous version of the statute rather than rely on the plain text of the statute. Given that obligation, the State argues that we must presume the Legislature's continued use of the phrase "material to any matter involved in the action" indicated an attempt to incorporate this Court's precedent interpreting the previous version of the statute. As discussed below, this presumption only applies when there has been a previous, authoritative judicial construction of the phrase. There hasn't been.

### The "Prior Construction Canon" Requires an Authoritative Judicial Construction of the Phrase "Material to Any Matter Involved in the Action"

When the Legislature revises a particular statute that has been judicially construed, without changing the construed language, it is presumed that the Legislature intended that the same construction should continue to be applied to that statute.[57] The clearest rationale for this

---

[56] Bryan A. Garner, A DICTIONARY OF MODERN LEGAL USAGE 550 (Oxford Univ. Press, 2d ed. 1995).

[57] *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 330 (2015) (describing the prior construction canon as the rule that, where judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute is presumed to incorporate that interpretation); *Lewis v. State*, 127 S.W. 808, 812 (Tex. Crim. App. 1910); *see also State v. Medrano*, 67 S.W.3d 892, 902 (Tex. Crim. App. 2002).

presumption is that when a term has been authoritatively interpreted by a high court, the members of the bar practicing in that field reasonably enough assume that, in statutes pertaining to that field, the term bears the same meaning.[58]  But when there has been no settled interpretation of the statutory phrase about which the legislature could have been made aware, the presumption does not apply.[59]

The court of appeals properly noted that Article 39.14 had been the subject of substantial judicial interpretation prior to passage of the Michael Morton Act.  But that "judicial interpretation" does not clearly focus upon the meaning of the phrase "material to any matter involved in the action."  Rather, when we have interpreted the previous version of Article 39.14, we have focused upon whether a trial court's refusal to order disclosure amounted to reversible error because the original version of the statute left the issue of disclosure to the trial court's discretion. Further, our precedent has muddied the issue by combining the question of harm or prejudice with the scope of a trial court's discretion.

---

[58] Scalia & Garner, *supra* note 25, at 248.

[59] *See, e.g., Forgerty v. Fantasy, Inc.*, 510 U.S. 517, 531 (1994); *Lightfoot v. Cendant Mortg. Corp.*, 137 S. Ct. 553, 564 (2017) (rejecting Fannie Mae's prior construction canon argument because "none of the cases on which Fannie Mae relies suggest that Congress in 1954 would have surveyed the jurisprudential landscape and necessarily concluded that the courts had already settled the question whether a sue-and-be-sued clause containing the phrase 'court of competent jurisdiction' confers jurisdiction on the federal courts.").

Consequently, we lack a previous, authoritative interpretation of what constitutes evidence that is "material to any matter involved in the action" when interpreting the amended version of Article 39.14.[60]

## The 1965 Code of Criminal Procedure and Article 39.14

As the SPA recognized in its amicus brief to the court of appeals, Article 39.14's use of the phrase "material to any matter involved in the action" was never meant to be a codification of the materiality standard later adopted by the United States Supreme Court.[61] Our Legislature originally enacted Article 39.14 as part of a revision of the Texas Code of Criminal Procedure in 1965.[62] The State Bar had recommended revision as early as 1923,[63] but, after inaction from the legislature, the State Bar Board of Directors formed a special committee in 1958 to prepare a draft

---

[60] *Return Mail, Inc. v. United States Postal Serv.*, 139 S. Ct. 1866 (2019) (prior construction canon does not apply because "there is no 'settled' meaning of the term 'person' with respect to the newly established AIA review proceeding."); *Armstrong*, 575 U.S. at 330 ("[The prior construction] canon has no application here. The language of the two provisions is nowhere near identical; and even if it had been, the question whether the Boren Amendment permitted private actions was far from 'settled.'").

[61] *See* SPA Amicus Br. on Direct Appeal 10 ("Non-disclosed evidence the defense claims it was entitled to is often referred to as '*Brady* evidence' even when the claim is statutory. The two are distinct, and always have been."), 19 ("The 2014 addition of subsection (h) is proof that the Act was not intended to (re)codify *Brady*.").

[62] TEX. CODE CRIM. PROC. art. 39.14 (1965); William G Reid, *The Texas Code of Criminal Procedure,* 44 TEX. L. REV. 983, 1000 (1966) (noting "the revised Code allows defendant limited discovery within the discretion of the court" but "the former Code authorized neither pretrial nor trial motions for production of tangible evidence in a criminal case.").

[63] Reid, *supra* note 62, at 985.

of revisions.[64]  The Bar submitted a proposal in 1962 targeting a number of different areas for revision.  The revision of the Code was initially passed in 1963, but the Governor vetoed it due to non-substantive defects in the bill that had been submitted for his approval.[65]  The bill passed again in 1965 with no substantive changes being made to the discovery provision.[66]

Article 39.14 was patterned after its civil counterpart, Rule 167 of the Rules of Civil Procedure.[67]  One possible justification seems to be that civil lawyers who were familiar with the civil discovery scheme would not have wanted to learn an entirely different system when representing indigent defendants.[68]  At the time, the text of Rule 167 read as follows:

---

[64] Fred Erisman, *Law in the Making*, 23 Tex. B.J. 527 (1960).

[65] *See* Reid, *supra* note 62, at 986 ("The revision of the Code passed by the fifty-eighth legislature was vetoed by Governor John Connally on June 5, 1963, primarily because of technical defects in the bill submitted for his approval.").

[66] *Compare* Acts 1965, 59th Leg., 317, ch. 722, § 1, *with* Senate Bill 270, 58th Leg., Reg. Sess. (1963); Reid, *supra* note 62, at 1000–01 (noting that bar committee's proposed limited rule of discovery was accepted by the legislature without change).

[67] *Compare* Tex. Code Crim. Proc. art. 39.14 (1965), *with* Tex. R. Civ. Proc. 167.

[68] Fred Erisman, *Revision of Code of Criminal Procedure*, 27 Tex. B.J. 935 (1964) ("Within the framework of familiar practice and procedure, we [the Committee on Revision of the Code of Criminal Procedure] have tried to strip the 'mystery' from the practice of Criminal Law and put in the hands of the Civil Practitioner, procedural tools by which he and the courts can efficiently and properly dispose of criminal charges lodged against a defendant[.]"); Grace Dana Runge, *Texas Criminal Discovery*, 47 Tex. L. Rev. 1182, 1185 (1969) ("Until this rule was adopted by the legislature in 1965, there was no criminal discovery statute in Texas. The article was patterned on its civil counterpart, largely for practical reasons. The majority of criminal defendants are indigent and are usually defended by court appointed civil lawyers. It was

Upon motion of any party showing good cause therefore and upon notice to all other parties, and subject to such limitations of the kind provided in Rule 186b as the court may impose, the court in which an action is pending may order any party to produce and permit the inspection and copying or photographing by or on behalf of the moving party, of any designated documents, papers (except written statements of witnesses), books, account, letters, photographs, objects or tangible things, not privileged, which constitute or contain evidence material to any matter involved in the action and which are in his possession, custody, or control, or order any party to permit entry upon designated land or other property in his possession or control for the purpose of inspecting, measuring, surveying or photographing the property or any designated object or operation herein granted shall not extend to the written communications passing between agents or representatives or the employees of either party to the suit, or communications between any party and his agents, representatives, or their employees, where made subsequent to the occurrence or transaction upon which the suit is based, and made in connection with the prosecution investigation or defense of such claim or the circumstances out of which same has arisen.[69]

Notably, the 1963 bill that proposed reformation of the Code of Criminal Procedure borrowed the phrase "material to any matter involved in the action" directly from Rule 167 of the Rules of Civil Procedure.[70] And,

---

thought that since these attorneys were already familiar with the civil discovery statute, there would be no point in making them learn an entirely different system when defending an indigent in a criminal case.").

[69] *See, e.g., Ex parte Landon*, 325 S.W.2d 121, 123 (Tex. 1959); TEX. CODE CRIM. PROC. art. 39.14 (1965).

[70] Senate Bill 270, 58th Leg., Reg. Sess. (1963); *see also* TEX. R. CIV. PROC. 167 (amended 1957).

when the Code of Criminal Procedure was finally passed and signed into law in 1965, Article 39.14 contained the same language.[71] *Brady v. Maryland* was decided in 1963—after the bill was introduced.[72] And it was not until 1976 that the United States Supreme Court first defined "material" and even then it did so only as a matter of constitutional due process.

> The proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt. Such a finding is permissible only if supported by evidence establishing guilt beyond a reasonable doubt. It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial.[73]

When our Legislature included the phrase "material to any matter involved in the action" in Article 39.14 in 1963, it could not have incorporated the future concept of "materiality" referenced in *Brady v. Maryland*.[74] It was equally impossible for our Legislature, in 1965, to

---

[71] Acts 1965, 59th Leg., 317, ch. 722, § 1.

[72] *Brady v. Maryland*, 373 U.S. 83, 87 (1963) ("We now hold that the suppression by the prosecutor of evidence favorable to the accused upon request violates due process where the evidence is material to either guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.").

[73] *Agurs*, 427 U.S. at 112–13 (internal citations omitted).

[74] *Brady*, 373 U.S. at 87.

have incorporated the due process concept of "materiality" set out in 1976 by the United States Supreme Court in.[75] Neither *Brady* nor *Agurs* had been decided at the time our Legislature started drafting what became Article 39.14. Further, none of the revisions of Article 39.14 leading up to the Michael Morton Act incorporated the language of the *Brady* concept of materiality into the statute.

## This Court's Interpretation of Article 39.14

When this Court interpreted Article 39.14, the Court necessarily focused upon when the trial court was required to order disclosure of particular evidence rather than whether particular evidence was "material to any matter involved in the action." We consistently held that a trial court was not required to order disclosure unless the motion for discovery was specific and established that there was good cause for disclosure, the evidence was material, the evidence was not privileged, and the evidence was in the possession of the State.[76] When the motion for disclosure was sufficient, we recognized that trial courts have discretion to order disclosure of evidence, even evidence that would not make a difference

---

[75] *Agurs*, 427 U.S. at 112–113.

[76] *See, e.g., Sonderup v. State*, 418 S.W.2d 807, 808 (Tex. Crim. App. 1967).

in the outcome of the case.[77]  But we required reversal of a conviction for the failure to order disclosure when particular evidence was so compelling that it would have made a difference to the ultimate issues of guilt or punishment.[78]

This approach made sense because Article 39.14 required a discretionary court order before the State had to disclose anything pursuant to the statute.[79] Deciding whether to reverse the conviction was more likely to be dispositive than deciding whether particular evidence could be characterized as "material to any matter involved in the case." We only reversed when the evidence at issue would have made a difference at guilt or punishment, but we did so after holding that a trial court could have—and should have—ordered disclosure pursuant to its discretionary authority.[80]

*Detmering* and *Bates*

---

[77] *Quinones*, 592 S.W.2d at 940 (providing that the trial court has discretion to order discovery pursuant to Article 39.14, even that not constitutionally commanded)*; Bates v. State,* 587 S.W.2d 121, 131 (Tex. Crim. App. 1979) (noting Article 39.14 vests the trial court with discretion in considering such motions such as that for an examination of tape recordings).

[78] *Quinones*, 592 S.W.2d at 940; *see also Bates*, 587 S.W.2d at 131.

[79] *See Campos v. State*, 468 S.W.2d 81, 82 (Tex. Crim. App. 1971) (holding that Article 39.14 was not triggered without a showing that discovery motion had been presented to and acted upon by a judge).

[80] *See, e.g.*, *Quinones*, 592 S.W.2d at 940.

When the Court first considered the issue of inspecting tangible evidence, the Court overruled a trial court's refusal to order inspection only when the failure to disclose in that situation amounted to reversible error.  In *Detmering v. State*, we recognized that under Article 39.14 a defendant charged with possession of LSD had a right to an independent, chemical inspection of the controlled substance rather than a mere visual inspection.[81]  In reaching that decision, we relied upon the Special Commentary to the statute provided by Presiding Judge Onion (who had also served on the committee responsible for drafting the original verison of Article 39.14).[82]  According to the Court, "if it is known that the State is planning to base its case on a fingerprint, bullet, pistol or rifle, book or record, the defendant can have his own expert examine the same under the safeguards provided."[83]

Later, in *Bates v. State*, we considered a request for inspection of original tape recordings of the defendant speaking with two other witnesses, one of whom was assisting police in a bribery investigation of

---

[81] *Detmering v. State*, 461 S.W.2d 863, 864 (Tex. Crim. App. 1972).

[82] *Id.*

[83] *Id*.

the defendant.[84]  The defendant had been allowed to inspect copies of the recordings, and there was no indication that the original recordings had been altered.[85]  Though the Court held that the trial court should have granted the motion to inspect the recordings, we also held that the error in refusing to order the inspection was not reversible absent a showing of injury or harm.[86]

In reaching this conclusion, the Court distinguished *Detmering* because the evidence in *Detmering* was "indispensable to the State's case."[87]  According to the Court, the defendant in *Detmering* sought to inspect the contraband he was charged with possessing, and this was why the Court regarded the evidence in *Detmering* as "indispensable to the State's case."[88]  We did not provide any authority for this conclusion.  Nor did we explain why we believed the trial court should have ordered the inspection of the original tape recordings even though we concluded they were merely "one strand in a web of

---

[84] *Bates*, 587 S.W.2d at 124–25.

[85] *Id.* at 131.

[86] *Id.*

[87] *Id*.

[88] *Id*.

incriminating evidence adduced at trial."[89]  It appears that this distinction was necessary to explain why the trial court's failure to order inspection was harmless error in *Bates* even though it was harmful error in *Detmering*.[90]

*Quinones*, *McBride*, and the Aftermath

Later, this Court seemed to engraft the due process "materiality" standard onto the harm analysis attendant to a trial court's refusal to grant discovery.  In *Quinones v. State*, the defendant sought discovery of tape recordings of the defendant's own statements.[91]  The Court first set out the relevant text of Article 39.14, and then concluded, "Tape recordings of a statement by the accused are 'objects or tangible things not privileged, which constitute or contain evidence material to any matter involved in the action.'"[92]  Later, we cited *Bates* for our conclusion that the trial court "did have the discretionary power to order discovery

---

[89] *Id.*

[90] *Bates*, 587 S.W.2d at 131 (citing *Hollowell v. State*, 571 S.W.2d 179 (Tex. Crim. App. 1978), which held that a prosecutor's refusal to comply with trial court's discovery order authorizing disclosure and inspection of a fingerprint was harmless error).

[91] *Quinones*, 592 S.W.2d at 937.

[92] *Id.* at 939.

of this tape recording."[93]   But we did not stop there.

As in *Bates*, we went on to consider in *Quinones* whether the trial court's refusal to order discovery of this evidence constituted reversible error.   We then explained that we had "expressly chosen to define 'materiality' under Texas law in the due process terms employed by the Supreme Court in *United States v. Agurs.*"[94]   But the cases we relied upon for that proposition, *Stone v. State* and *Frank v. State*, were decided on due process grounds; they did not purport to define what constituted evidence "material to any matter involved in the action" under Article 39.14.[95]   Further, we relied upon this standard to hold that the trial court did not abuse its discretion in failing to order disclosure of tapes even though we acknowledged that they were "objects or tangible things not privileged, which constitute or contain evidence material to any matter involved in the action."[96]   And in concluding that the trial court was not

---

[93] *Id.* at 941.

[94] *Id.* (citing *Agurs*, 427 U.S. 97).

[95] *See Stone v. State*, 583 S.W.2d 410, 414 (Tex. Crim. App. 1979) ("In his fifth ground of error, appellant alleges he was denied due process because of a material misrepresentation and suppression of evidence by the prosecutor in connection with prior inconsistent statements made by the complainant."); *Frank v. State*, 558 S.W.2d 12, 13 (Tex. Crim. App. 1977) ("Appellant contends that the court erred in refusing to grant a new trial because the prosecutor did not disclose to the appellant or his counsel evidence obtained during trial which it is alleged was exculpatory.").

[96] *Quinones*, 592 S.W.2d at 939.

required to order disclosure despite the authority to do so, we noted that the tapes themselves were not exculpatory and therefore would not have affected the outcome.[97]

Ultimately, we held in *Quinones* that a trial judge was not required to permit discovery unless the evidence sought is "material to the Defense of the accused."[98] Though we used the word "material," it is not clear that the opinion actually construed the word "material" as it appeared in Article 39.14. Article 39.14, does not, for example, use the phrase "material to the Defense of the accused." We also appear to have placed emphasis on the word "Defense," consistent with our holding that the trial court was not required to order discovery because the recordings at issue were not exculpatory.[99] And we rejected the defendant's argument he was prejudiced because the lack of disclosure affected his plea decision by stating, "This claim of prejudice does not make the tape 'material' as that term is defined in *Stone* and *Agurs*."[100] In other words,

---

[97] *Id.* at 941 ("This was not a case where the prosecutor sought to withhold evidence that the defense could have advantageously presented to the jury; it is just the opposite.").

[98] *Id.*

[99] *Id.* at 941 (drawing a distinction between evidence that will harm a defendant and evidence that is "material to the Defense").

[100] *Id.* As mentioned above, neither of those cases involved an interpretation of Article 39.14.

we appeared to hold that evidence was only "material to the Defense" if it could be characterized as exculpatory.  As Professors Dix and Schmolesky have noted:

> "Materiality," as used in this context, must be distinguished from the case law developing somewhat similar terminology as used in the judicially developed standard for appellate review of a trial judge's denial of [a] motion under Article 39.14 prior to the 2005 revision. . . . . [U]nder this case law reversible error existed on appeal only if the trial judge abused discretion that in most cases turns upon whether the judge's ruling deprived the defendant of access to evidence *material to the defendant's defense*. "Material to [the] defense," in turn, required that the evidence be exculpatory. This case law, however, developed the judicially promulgated phrase, "material to the defense of the accused," which is different—and narrower—than the statutory criterion requiring only that the evidence be "material to any matter involved in the action . . . ."[101]

We tried to clarify the right to inspect physical evidence in *McBride v. State*, but in doing so we focused on the "good cause" requirement found in the statute.[102]  There, the defendant sought independent examination of the cocaine he was charged with possessing.  We set out the text of Article 39.14 and then noted the defendant's obligation to show "good cause" before being entitled to inspection.[103]  We explained

---

[101] George E. Dix & John M. Schmolesky, 42 TEXAS PRACTICE SERIES: CRIMINAL PRACTICE AND PROCEDURE § 27:67 (3d ed. 2010) (footnote omitted).

[102] *McBride v. State*, 838 S.W.2d 248, 250 (Tex. Crim. App. 1992).

[103] *Id.*

that decision on what is discoverable is left up to the trial judge's discretion, but a judge is required "to permit discovery if the evidence sought is material to the *defense* of the accused."[104]  Then, relying upon *Detmering*, *Bates,* and *Quinones*, we recognized an absolute right to an independent examination of evidence "indispensable to the State's case," and we grounded this holding on the rationale that evidence that is indispensable to the State's case is necessarily material to the defense of the accused.[105]

Significantly, in *McBride* we rejected the court of appeals' holding that the controlled substance at issue was not "material" simply because the defendant could only show that there was a mere possibility that independent analysis might yield exculpatory results.[106]  We held instead that the purity of the substance was material because it could reinforce the defensive theory of lack of intent or knowledge, as well as advance the defensive theory that the drugs had been planted.[107]  Yet this understanding of "material" was antithetical to the United States

---

[104] *Id.* (quoting *Quinones*, 592 S.W.2d at 941).

[105] *Id*. at 251.

[106] *Id*. at 251 n.7.

[107] *Id*.

Supreme Court's decision in *Agurs*, which rejected the argument that evidence could be material based upon the mere possibility that it might have been helpful to the defense.[108]  More importantly, our conclusion that the defendant in *McBride* was entitled to inspection of the evidence at issue contradicted our holding in *Quinones* that the trial court could refuse discovery because the evidence was not shown to be exculpatory.[109]

After *McBride*, we alternated between standards for determining when a trial court's refusal to order disclosure was reversible error.  On the one hand, in *Massey v. State*, we applied the "indispensable to the State's case" standard that we articulated in *McBride* to a situation in which the defendant failed to carry his burden to demonstrate "good cause" for discovery.[110]  On the other hand, in *Ex parte Miles*, we applied the traditional *Brady* standard set out in *Quinones*, but we did so to note that Article 39.14's exclusion of privileged material does not trump the

---

[108] *Agurs*, 427 U.S. at 109–10 (holding that "the mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense").

[109] *Quinones*, 592 S.W.2d at 940 ("More importantly, there are no statements on the tape that are exculpatory in any way.  This is not a case where the prosecutor sought to withhold evidence that the defense could have advantageously presented to the jury.").

[110] *Massey v. State*, 933 S.W.2d 141, 153 (Tex. Crim. App. 1996).

due process requirement of disclosure under *Brady*.[111] Then, in *Ehrke v. State*, we said again that if a defendant in a controlled-substance case asks to inspect the alleged controlled substance, then the court must permit inspection, even without a showing of good cause, because the substance is material to the defense of the accused.[112]

On the whole, this Court's jurisprudence in this area focused on whether a conviction could be reversed because of a trial court's discretionary call to refuse to order disclosure, rather than on whether particular evidence could be categorized as "material to any matter involved in the action." There had not been an authoritative decision by the Court regarding the meaning of the phrase at the time the Michael Morton Act was passed. The many different arguments presented in this case bear that out.

Our precedent can be read to support the position that our use of the materiality standard for *Brady* violations was this Court's attempt to define the word "material" in the statute. But even then, which definition are we talking about: "indispensable to the State's case" or "creates a

---

[111] *Ex parte Miles*, 359 S.W.3d 647, 670 (Tex. Crim. App. 2012).

[112] *Ehrke*, 459 S.W.3d at 611. *Ehrke* was decided after the enactment of the Michael Morton Act but was tried under the previous version of the statute.

reasonable doubt that did not otherwise exist"?  Conversely, our precedent can also be read as applying "materiality" to the standard for determining harm from a trial court's discretionary refusal to order disclosure rather than construing the statutory phrase "material to any matter involved in the action."  This latter reading of our precedent focuses upon a different inquiry than courts are required to undertake after the passage of the Michael Morton Act.  Not only is there no statutory limitation in Article 39.14(a) to the ultimate issue of guilt or punishment, Article 39.14(h) creates a statutory duty to disclose that is broader than the constitutional due process obligation recognized in *Brady v. Maryland*.  Indeed, the creation of Article 39.14(h) is inconsistent with this Court's precedent relying upon the due process concept of "materiality" to determine whether the refusal to order disclosure amounted to harmful error.  This statutory change suggests a departure from our precedent interpreting the previous version of Article 39.14.

As mentioned above, required disclosure is no longer left to the discretion of the trial court.  Given that, we could just as easily presume a legislative abandonment of our "materiality" precedent as we could presume that our Legislature intended a particular meaning for the

statutory phrase at issue. Consequently, we hold that the "Prior Construction Canon" is inapplicable in this case because there has not been an authoritative decision from this Court on what constitutes evidence "material to any matter involved in the action." Without that presumption, we must rely upon the ordinary definition of the terms in the statute.

In an amicus brief to this Court, the SPA argues that we should apply our precedent interpreting the previous version of Article 39.14 as a matter of *stare decisis*.[113] But we are not asked to apply the previous version of the statute; we are asked to interpret a new version of the statute as if it had been enacted in its amended form.[114] Having determined that the "Prior Construction Canon" does not apply in this case, there is no reason to apply our precedent interpreting the previous version of Article 39.14.

### The Legislative History of the Michael Morton Act Doesn't Require a Different Interpretation

Even if we were to assume that the use of the word "material" in Article 39.14 is ambiguous and consult extra-textual sources, the

---

[113] SPA Amicus Br. 3

[114] *See Powell*, 516 S.W.3d at 493.

legislative history behind the passage of the Michael Morton Act does not provide definitive support for any particular construction beyond adopting the ordinary meaning of the text. The goal behind the passage of the Michael Morton Act was first to preserve a criminal defendant's rights under *Brady v. Maryland*.[115] The working theory for the bill sponsors was that uniform discovery would make discovery more efficient; reduce discovery disputes; and save taxpayer money by reducing appeals, incarceration, and possible compensation for wrongful convictions.[116]

There was some opposition to the broad scope of the bill as a whole. Two prosecutors testified against the bill in their individual capacities, but neither took issue with the phrase "material as to any matter involved in the action."[117] Ultimately, the bill and the opposition to it focused upon large-scale change to the existing statute. There is no specific discussion of why the Legislature chose to keep the phrase "material to any matter involved in the action." Even if we assume that those opposed to the bill would have preferred an outcome-determinative interpretation of the word "material", we could also assume that those in favor of the bill

---

[115] Sen. Comm. on Criminal Justice, Bill Analysis, Tex. S.B. 1611, 83rd Leg., R.S. (2013).

[116] *Id*.

[117] *See* Hearing on S.B. 1611 Before the H. Comm. On Judiciary & Civil Jurisprudence, 83rd Leg., R.S. (2013).

favored the ordinary definition of the word.

Notably, the first version of the bill specifically used the word "relevant" to describe the evidence subject to disclosure rather than "material."[118] The sponsors reached a compromise that deleted some text from the previous version of Article 39.14(a) but kept the reference to evidence "material to any matter involved in the action."[119] Yet, throughout the life of the bill, the bill analyses continued to refer to the disclosure of "relevant" evidence.[120]

The Legislature's choice to use the same phrase from the previous statute could suggest that "material" should be seen as something different than "relevant." But, it is equally possible that the legislative compromise flowed from the appreciation that the existing language in the statute could be seen as synonymous with "relevant," particularly in light of the many definitions of "material" that include "relevant." And many practitioners and commentators who have reviewed the new

---

[118] Tex. S.B. 1611, 83rd Leg., R.S. (2013) (introduced).

[119] Tex. S.B. 1611, 83rd Leg., R.S. (2013) (engrossed & enrolled).

[120] *Compare* Senate Research Center, Bill Analysis, Tex. S.B. 1611, 83rd Leg., R.S. (March 25, 2013) (introduced), *with* Senate Research Center, Bill Analysis, Tex. S.B. 1611, 83rd Leg., R.S. (July, 26 2013) (enrolled). During the third reading of 2013 SB 1611, Senator Ellis, the primary author of the Michael Morton Act, stated: "...It removes barriers to discovery processes in Texas to ensure a more relevant evidence procedure comes forward and evidence that is relevant will be disclosed; it has to be disclosed." S.J. of Tex., 83rd Leg., R.S. 818, 819 (2013) (Rodney Ellis' statement of intent).

statute seem to regard it as a complete break from the previous framework for criminal discovery.[121]

Ultimately, we are simply left with the text of the phrase and must consider the meaning of "material" in the context that it appears in the statute.[122]   A reasonable reader would have understood the word "material" to have its ordinary definition at the time it was enacted, in light of the way it appears in the statute.[123]  We cannot say that our case law on the issue was so clear that our Legislature waded through it and passed the Michael Morton Act with any specific meaning in mind beyond the ordinary one.[124]  Consequently, we hold that the word "material" as it appears in the statute means "having a logical connection to a consequential fact" and is synonymous with "relevant" in light of the context in which it is used in the statute.[125]

---

[121] *See* Cynthia E. Hujar Orr & Robert G. Rodery, *The Michael Morton Act: Minimizing Prosecutorial Misconduct*, 46 ST. MARY'S L.J. 407, 414 (2015) ("[The Act] creates an open file policy, obviating the need for the defense team to continue requesting discovery."); Randall Sims & R. Marc Ranc, *Two Views of Morton: When the Michael Morton Act Took Effect in January 2014, It Changed the Way Criminal Cases Are Handled in Texas—and How Prosecutors and Defense Attorneys Work*, 77 TEX. B.J. 964, 964, 966 (2014) ("This new law has changed criminal discovery dramatically by codifying open-file policies.").

[122] *See Boykin*, 818 S.W.2d at 785.

[123] *See* Scalia & Garner, *supra* note 25, at 46.

[124] *See Lightfoot*, 137 S. Ct. at 564.

[125] BLACK'S LAW DICTIONARY 1170 (11th ed. 2019); BLACK'S LAW DICTIONARY 1124 (10th ed. 2014); BLACK'S LAW DICTIONARY 998 (8th ed. 2004); BLACK'S LAW DICTIONARY 793 (abridged 7th

## <u>Were the Exhibits in this Case</u>
## <u>"Material to Any Matter Involved in the Action"?</u>

Yes. Appellant is correct that the court of appeals erred in its analysis regarding whether the exhibits were "material." We have observed there are no distinct facts of consequence at punishment that proffered evidence can be said to make more or less likely to exist.[126] But that is because deciding punishment is a normative process that is not intrinsically fact bound.[127] To allow for this, we have recognized that punishment-phase facts fall within two categories: normative facts and subsidiary facts. We recently explained these categories in *Beham v. State*.

> Normative facts are those that directly impact "the factfinder's normative response to the defendant." An example of this is evidence that, beyond a reasonable doubt, the defendant previously committed an extraneous criminal offense. This is a basis upon which a jury could legitimately form a clearer opinion as to the proper punishment for the defendant's conduct. Normative facts can therefore be thought of as "fact[s] of consequence" in the punishment context. Subsidiary facts are those "that do not by themselves impact a factfinder's normative response to the defendant," but are relevant insofar as they assist in "proving or disproving a normative fact." If the normative fact at issue is the

ed. 2000).

[126] *Ellison v. State*, 201 S.W.3d 714, 718–19 (Tex. Crim. App. 2006).

[127] *Beham v. State*, 559 S.W.3d 474, 478 (Tex. Crim. App. 2018).

commission or non-commission of an extraneous offense, some examples of subsidiary facts might be eyewitness testimony pertaining to the offense, an alibi, or evidence affecting a witness's credibility.[128]

In this case, the exhibits were a collection of booking records, pen packets, and judgments of prior convictions that were used to prove two prior convictions for enhancement and other extraneous offenses that Appellant had committed. It is enough to say that these exhibits were at least "subsidiary facts" that could assist the fact-finder in finding normative facts such as the commission of prior offenses, both extraneous and enhancement. Simply put, they have a logical connection to a consequential fact and should have been disclosed upon a proper request.

## **Conclusion**

According to the plain text of Article 39.14, criminal defendants now have a general statutory right to discovery in Texas beyond the guarantees of due process. Under this new version of this statute, we interpret the word "material" as it appears in context to mean "having some logical connection to a fact of consequence." The exhibits at issue in this case fit that definition. The State erred by failing to produce those

---

[128] *Id.* at 480 (internal citations omitted).

exhibits prior to trial in violation of Article 39.14(a). We reverse the court of appeals' decision and remand this case for the court of appeals to conduct the proper harm analysis.

Filed: March 3, 2021

Publish